Justice Armstead:
*620 We are asked whether the Public Service Commission of West Virginia erred by finding that the Jefferson County Public Service District may "indefinitely delay" a project to upgrade its sewer service. This Court may reverse an order by the Public Service Commission when: (1) it exceeded its authority; (2) it made factual findings that are not supported by adequate evidence; or (3) the substantive result of its order is not proper. See Syl. Pt. 1, Central W.Va. Refuse, Inc. v. Pub. Serv. Comm'n of W.Va. , 190 W.Va. 416, 438 S.E.2d 596 (1993). None of these three situations apply to the facts of this case. Therefore, we affirm the Public Service Commission's order.
I.
FACTUAL AND PROCEDURAL BACKGROUND
This case stems from two separate but related proceedings before the Public Service Commission which were consolidated below into a single proceeding. The first proceeding pertained to an effort to consolidate three sewer systems in Jefferson County ("the consolidation proceeding"). The second proceeding pertained to a project to upgrade service in one of the sewer systems slated for consolidation, otherwise known as the Flowing Springs project ("Flowing Springs proceeding"). For the ease of the reader, we discuss the facts underlying these two proceedings separately.
The Consolidation Proceeding
The consolidation proceeding dealt with three sewer systems: (1) the Jefferson County Public Service District ("PSD"); (2) a system operated by the City of Ranson; and (3) a system operated by the City of Charles Town Utility Board ("CTUB"). For the thirty years leading up to this proceeding, the PSD and the City of Ranson collected sewage from their respective customers and would transport that sewage for treatment at a plant operated by the City of Charles Town. Due to residential and commercial growth and annexation, this dynamic between the three sewer systems has become inefficient. The sewer systems overlap in some areas, *621 and the PSD faces considerable financial burden in operating and maintaining its system.
In April 2017, the Jefferson County Commission ("County Commission"), which is charged with managing the fiscal affairs of Jefferson County, filed a notice of a public hearing on consolidating the three sewer systems into a single system operated by the CTUB. At the hearing, the County Commission voted to consolidate the three sewer systems and to dissolve the PSD once the consolidation is complete. The County Commission also filed a petition with the Public Service Commission seeking permission to consolidate the three sewer systems and to dissolve the PSD, thus initiating the consolidation proceeding. The City of Charles Town intervened in the consolidation proceeding in support of consolidation.
The proposed consolidation was met with much support. The Public Service Commission received 143 comments from the public on this matter, with 140 comments in support of consolidation and three comments in opposition. Furthermore, after consolidation was proposed, the City of Ranson immediately began negotiations for the CTUB to acquire its sewer system. The consolidation of the City of Ranson's sewer system with the CTUB was completed by June 2018. The CTUB now owns and operates all of the sewer assets previously held by the City of Ranson.
The PSD initially opposed consolidation with the CTUB. However, in December 2017, the term of one of the PSD's board members expired, and the County Commission filled the vacancy with a new board member who was in favor of consolidation. In that month, the PSD voted to begin negotiations with the CTUB to transfer all of its assets, liabilities, and customers and to dissolve once the consolidation is complete. In response to the PSD's vote to consolidate, the County Commission sought, and was granted, a stay in the consolidation proceeding before the Public Service Commission.
The Flowing Springs Proceeding
While the County Commission was proposing consolidation, the PSD was in the planning stages of the Flowing Springs project, a project to upgrade the PSD's wastewater collection and transmission system. The estimated cost of constructing the Flowing Springs project was approximately $6,900,000.00.
In May 2016, the PSD sought a "certificate of public convenience and necessity" from the Public Service Commission for the Flowing Springs project. Under West Virginia Code § 24-2-11(a) (2015),[1] this certificate is required before the PSD is "authorized" to begin construction on or to obtain a license for the Flowing Springs project.
In April 2017, the Public Service Commission issued an order granting the requested certificate authorizing the construction of the Flowing Springs project. The Public Service Commission's order instructed the PSD that it must seek permission before it significantly changes the plans or scope of the project. It is undisputed that the order did not require the PSD to begin or complete construction of the project by any specific date.
In reliance on the certificate for the Flowing Springs sewer upgrades, some land developers expended funds for developments located in Jefferson County. These land developers include members of the Jefferson County Citizens for Economic Preservation and Arcadia Land, Inc. In addition, Shenandoah Junction Public Sewer, Inc., a public sewage corporation, hoped to benefit from the upgrades by connecting its flows to the PSD's force main upon completion of the Flowing Springs Project.
In December 2017, before any construction on the Flowing Springs project had begun, the PSD voted to "indefinitely delay" the project to give the PSD time to negotiate its consolidation with the CTUB and to reassess the specific plans for the Flowing Springs project. In response, Jefferson County Citizens for Economic Development, Arcadia Land, Inc., and Shenandoah Junction Public *622 Sewer, Inc. ("the Petitioners"), filed a complaint with the Public Service Commission against the PSD.
In their complaint, the Petitioners protested the PSD's decision to indefinitely delay the project, thus initiating the Flowing Springs proceeding. They requested that the Public Service Commission: (1) order the PSD to construct the Flowing Springs Project; and (2) petition the Circuit Court of Jefferson County to attach the PSD's assets and place them in the sole control of a receiver. Under West Virginia Code § 24-2-7(b) (2015), the Public Service Commission "may" petition the circuit court of the county in which a public utility operates to place the utility's assets in a receivership upon a finding that the utility is "unable or unwilling" to adequately meet its customers' needs or is "unresponsive to the needs of its customers." The PSD filed a motion to dismiss the Petitioners' claims. The County Commission intervened and also filed a motion to dismiss the Petitioners' claims against the PSD.
The Proceedings are Combined
In February 2018, the Public Service Commission combined the Consolidation proceeding and the Flowing Springs proceeding into a single claim. The City of Charles Town and the County Commission were parties to this combined proceeding and supported the PSD's position that the Petitioners' complaint against the PSD should be dismissed.
The PSD, the County Commission, and the City of Charles Town filed pleadings before the Public Service Commission affirming their commitment to provide the planned sewer upgrades in the Flowing Springs area. The PSD represented that:
[T]here has been no adverse change in the intention to upgrade and expand sewer service in the Flowing Springs area in order to meet customer needs. To the contrary, the PSD has been entirely consistent in its intention to upgrade and expand sewer service to efficiently meet customers' needs and, in order to accomplish that purpose, the PSD has concluded that a conveyance to Charles Town will best satisfy customer needs.
And that ....
The PSD has acted to preserve funding sources for the Flowing Springs Project and has conveyed that information to Charles Town[.]
Likewise, the County Commission reported to the Public Service Commission that: "the [PSD] and the City of Charles Town have committed to work cooperatively to upgrade and expand sewer service in the Flowing Springs area, taking into account the unification of the Charles Town, Ranson, and [PSD] sewer systems."
The City of Charles Town also affirmatively stated that it will implement the planned upgrades to the sewer system in the Flowing Springs area. It conveyed to the Public Service Commission that a similar project in Ranson had become necessary to upgrade and expand sewer services there ("the Ranson expansion"). If both projects were completed separately, the upgraded services would be redundant because the pipes leading from the Ranson expansion to the City of Charles Town's treatment plant would run parallel to the pipes from the Flowing Springs project to the same plant. The City of Charles Town hired an engineering firm to study the feasibility of combining the Flowing Springs project with the Ranson expansion. Based on the engineering firm's report, the City of Charles Town informed the Public Service Commission that it would be able to combine the Flowing Springs project with the Ranson expansion for a reduced cost of approximately $5,415,000.00. The City of Charles Town stated that combining the two projects would not result in any change in the scope of the sewer improvements to the Flowing Springs area in terms of work capacity or availability of services.
Nonetheless, the Petitioners asserted that, in light of the "indefinite delay" of the Flowing Springs project, the CTUB might not be obligated to provide the planned sewer upgrades to the Flowing Springs area. Therefore, they feared that the Flowing Springs project might never be completed according to its original plans. They contend that they have spent a considerable sum of money in *623 reliance on those upgrades, and they equate the PSD's "indefinite delay" of the Flowing Springs project as a "significant change" in the project's scope.
On June 26, 2018, the Public Service Commission entered an order: (1) permitting the consolidation of the PSD with the CTUB; (2) consenting to the dissolution of the PSD upon its consolidation with the CTUB; and (3) dismissing the Petitioners' complaint. As to the Petitioners' contention that the CTUB might not be obligated to provide sewer system upgrades in the Flowing Springs area, the Public Service Commission stated that:
The specific statements by Charles Town, County Commission, and PSD that Charles Town will improve sewer service in the area of the Flowing Springs developments outweigh the speculation presented by [the Petitioners] that Charles Town will not proceed with system upgrades.
Furthermore, the Public Service Commission noted that, once consolidated, the CTUB will have an obligation to provide safe and adequate sewer service to all of its customers, regardless of whether they reside in the Charles Town city limits. The Public Service Commission's order was entered without a hearing.
The Petitioners appeal the Public Service Commission's June 26, 2018, order to this Court.
II.
STANDARD OF REVIEW
In this case, we are asked to review an order by the Public Service Commission. We have held that:
In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.
Syl. Pt. 2, Monongahela Power Co. v. Pub. Serv. Comm'n of W.Va. , 166 W.Va. 423, 276 S.E.2d 179 (1981).
III.
ANALYSIS
The Petitioners argue that we should reverse the Public Service Commission's order. This Court may reverse an order by the Public Service Commission under one of the following situations:
The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of Monongahela Power Co. v. Public Service Commission , 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.
Syl. Pt. 1, Central W.Va. Refuse, Inc. , 190 W.Va. 416, 438 S.E.2d 596.
A. The Public Service Commission did not Exceed its Statutory Jurisdiction and Powers.
The Petitioners contend that the Public Service Commission exceeded its authority by dismissing their complaint against the PSD, thereby allowing the PSD to violate a state statute and the Public Service Commission's previous order. First, they argue that, by failing to construct the Flowing Springs project, the PSD violated West Virginia Code § 24-2-7(b) because it was "unable or unwilling to adequately serve its customers" and *624 "unresponsive to the needs of its customers." West Virginia Code § 24-2-7(b) states, in pertinent part, as follows:
If the Public Service Commission shall determine that any utility is unable or unwilling to adequately serve its customers ... or that its management is ... unresponsive to the needs of its customers , the commission may petition to the circuit court of any county wherein the utility does business for an order attaching the assets of the utility and placing such utility under the sole control and responsibility of a receiver.
(Emphasis added).
The Petitioners cite to the Public Service Commission's previous order granting a certificate of public convenience and necessity for the Flowing Springs project as evidence that the PSD failed to meet its customers' needs when it indefinitely delayed construction of the project. In other words, they claim that the certificate established that the project was necessary to meet the needs of the PSD's customers. Therefore, the Petitioners argue that the Public Service Commission must require completion of the Flowing Springs project to protect the PSD's customers.
We disagree that the grant of a certificate of public convenience and necessity mandates the immediate construction of the Flowing Springs project. Under West Virginia Code § 24-2-11(a), a certificate of public convenience and necessity merely "authorizes" a public utility to construct a sewer facility. As West Virginia Code § 24-2-11(a) provides:
A public utility ... may not begin the construction of any ... facility ... nor obtain any franchise, license or permit from any municipality or other governmental agency, .. unless and until it shall obtain from the Public Service Commission a certificate of public convenience and necessity authorizing such construction franchise, license or permit.
(Emphasis added).
The plain language of West Virginia Code § 24-2-11(a) does not require the PSD to immediately construct the Flowing Springs project simply because it was granted a certificate of public convenience and necessity. Highlighting this fact is the Legislature's revision of West Virginia Code § 24-2-11 in 2005, in which it replaced "requiring" with "authorizing." See West Virginia Code § 24-2-11(a) (1983), amended by West Virginia Code § 24-2-11(a) (2005). Clearly, the Legislature intended that a certificate of public convenience and necessity merely authorizes, or permits, a public utility to proceed with a project in accordance with its statutory and regulatory obligations.
The Public Service Commission's grant of a certificate of public convenience and necessity does not mean that the PSD failed to meet its customers' needs by putting the Flowing Springs project on indefinite delay. Indeed, the evidence provided by the PSD indicates that the delay was sought in order to explore means by which customer needs could be met in a more efficient and cost-effective manner. The Petitioners do not assert any other ground to say that the PSD violated a statute.
Furthermore, we do not find that the Public Service Commission allowed the PSD to violate its order granting a certificate of public convenience and necessity for the Flowing Springs Project. The order did not set a specific date by which the PSD was required to begin or complete the project's construction. Therefore, we are unconvinced that a delay of the Flowing Springs project, in itself, was a significant change in the scope or plans of the project in violation of the Public Service Commission's order.
We do not find that the Public Service Commission's order exceeded its statutory jurisdiction or powers.
B. There is Adequate Evidence to Support the Public Service Commission's Findings .
The Petitioners next argue that the Public Service Commission did not have adequate evidence to dismiss their complaint without first conducting a hearing. The Petitioners cite to no legal authority that requires the Public Service Commission to conduct a hearing before dismissing their complaint.
*625 In its order, the Public Service Commission noted the assurances by the PSD, the County Commission, and the CTUB that they will cooperate to provide the planned sewer improvements to the Flowing Springs area. The order further acknowledges that the PSD has taken steps to preserve funding sources for the project, and the CTUB has consulted with an engineering firm as to the most efficient way to move forward with the planned sewer improvements. Moreover, upon the consolidation of the CTUB and the PSD, the CTUB will be obligated to provide adequate sewer service to all of its customers, regardless of whether they are located in the current PSD.
By contrast, as the Public Service Commission remarked, the Petitioners merely speculated that the CTUB might not proceed with the Flowing Springs project because it would not be required to complete the project according to its original plans. The Public Service Commission stated that:
The specific statements by Charles Town, County Commission, and PSD that Charles Town will improve sewer service in the area of the Flowing Springs developments outweigh the speculation presented by [the Petitioners] that Charles Town will not proceed with system upgrades.
Under the facts of this case, we cannot say that the Public Service Commission acted without adequate evidence to support its findings. The evidence in this record supports the assurances by the PSD, the County Commission, and the CTUB that improvements to the Flowing Springs area are slated to move forward. The Petitioners provided no affirmative evidence to cast doubt on those assurances. Therefore, we do not find that the Public Service Commission erred by dismissing the Petitioners' complaint without first conducting a hearing.
C. The Substantive Result of the Public Service Commission's Order was not Improper.
Finally, our inquiry turns to whether the Public Service Commission arrived at a proper result when it dismissed the Petitioners' complaint. In making this determination, we afford deference to the Public Service Commission, and we have held that: "The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking[.]" Syl. Pt. 2, in part, Monongahela Power Co. , 166 W.Va. 423, 276 S.E.2d 179.
We find that the Public Service Commission arrived at the proper result when it dismissed the Petitioners' complaint. The Petitioners argued that the PSD erred by placing the Flowing Springs project on an indefinite delay. By contrast, the PSD, the County Commission, and the CTUB asserted that the delay was reasonable and necessary for them to plan for more efficient improvements to sewer service in the Flowing Springs area.
The record is uncontroverted that, when the PSD, the City of Ranson, and the CTUB operated separate sewer systems, their attempts to keep up with growing customer demand was, at times, inefficient. For example, the sewer systems of these separate districts overlapped in some areas, and the PSD faced considerable expense in maintaining and operating its own sewer system.
Likewise, the original plans for the Flowing Springs project contained inefficiencies. The Public Service Commission reported that, in a separate proceeding, it received more than thirty-five objections to the Flowing Springs project. A large portion of these objections complained that the project would benefit the City of Ranson, outside of the PSD, but that PSD customers would bear the cost of the improvements through a proposed rate increase.
The CTUB has explored the possibility of combining the sewer improvements in the Flowing Springs area with the Ranson expansion. It consulted with an engineering firm to study this possibility. The engineering firm reported that combining the sewer improvements in the Flowing Springs area with the Ranson expansion was feasible, would increase efficiency of services, and would not diminish the scope of improvements *626 in the Flowing Springs area in terms of work capacity or availability of services. The engineering firm reported that the cost of a combined project would likely be $5,415,000.00, a significant decrease from the approximately $6,900,000.00 originally projected for the Flowing Springs Project.
We find no reason why the Public Service Commission's decision to allow the PSD, the County Commission, and the CTUB time to plan for combined sewer improvements in the Flowing Springs area and Ranson was substantively improper. Therefore, we affirm the Public Service Commission's order dismissing the Petitioners' complaint.[2]
IV.
CONCLUSION
We find that the Public Service Commission did not exceed its authority or make factual findings that were not supported by adequate evidence. Furthermore, we find that the substantive result of the Public Service Commission's order was not improper. Therefore, we affirm the Public Service Commission's June 26, 2018, order.
Affirmed.
JUSTICE ALLEN H. LOUGHRY, II, suspended and therefore not participating.
JUSTICE PAUL T. FARRELL, sitting by temporary assignment.

In 2017, the legislature amended West Virginia Code § 24-2-11 in ways that do not affect this appeal.

Before disposing of this matter, we note the Petitioners' statement in their brief that: "The [Petitioners'] only objection to the [consolidation] and the dissolution of the PSD was the fact that there were no guarantees that the Flowing Springs Project would be completed." We have already held that the Public Service Commission did not err in its ruling on the delay of the Flowing Springs project. Therefore, we do not need to consider whether the Public Service Commission erred by permitting the CTUB to consolidate with the PSD or by consenting to the dissolution of the PSD after it consolidates with the CTUB.